IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Juan J. Molina,                                                    Case No. 3:08CV2912

              Plaintiff

      v.                                                         ORDER

Smearsal *et al.*,[1]

              Defendant

This is a prisoner civil rights suit against a corrections officer and other employees at the Allen Correctional Institution.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is defendants' motion for summary judgment. [Doc. 50]. For the following reasons, defendants' motion shall be granted.

**Background**

At the time of the events giving rise to this lawsuit, Plaintiff Juan Molina was an inmate with the Ohio Department of Rehabilitation and Correction (ODRC) incarcerated at Allen Correctional Institution (ACI). In January 2007, Molina was sharing a cell with an inmate named Kimmie.

Kimmie and Molina did not get along. Kimmie repeatedly physically threatened Molina. Molina asserts that he made numerous requests to transfer out of the shared cell. Despite their alleged knowledge of the Kimmie's violent propensities, the defendants ignored Molina's informal requests to be transferred.

---

[1] Plaintiff misspelled Officer Schmersal's last name was spelled incorrectly by Plaintiff when he filed this Complaint. With the exception of the heading, this opinion uses the proper spelling.

On January 11, 2007, Molina confronted Kimmie in a common area. Defendant Schmersal, a corrections officer, responded to the altercation. At Officer Schmersal's order, Molina sat down on the floor. Molina claims that Officer Schmersal then broke Molina's leg by sitting on him.

Molina was taken to St. Rita's hospital, and later to Ohio State University Medical Center. As a result of his injuries, Molina needed a range of medical treatments consisting of two surgeries, orthopedic shoes, various medications and special medical restrictions.

On returning to ACI on February 6, 2007, Molina had a hearing before the Rules Infraction Board. The Board found him guilty of violating institutional rules 4 and 19. Molina thereafter spent fourteen days in disciplinary segregation.

Molina asked to have Officer Dunlop testify on his behalf at his hearing. The Board denied the request because Dunlop was not on duty the day of the fight. Molina did not testify in his own defense. In finding Molina guilty of both rule infractions, the Board relied on Molina's written statement and the conduct report as evidence.

Molina filed this 42 U.S.C. §1983 lawsuit against several ACI employees, alleging excessive use of force, a due process violation and medical deliberate indifference.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### I. Supervisory Officials

Respondeat superior is not a proper basis for liability under § 1983. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (unpublished disposition) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

Molina named four supervisory officials in this case without alleging that these officials implicitly authorized, approved or knowingly acquiesced in unconstitutional conduct. Molina does not dispute this, nor provide any rebuttal evidence. Summary judgment is therefore granted in favor of defendants Featheringham, Factor, Marroquin, and Callaghan.[2]

---

[2] Defendants also request grant summary judgment with respect to health care administrator Pam Neal, but Molina alleges that Ms. Neal acted with deliberate indifference to his medical needs. See III, below.

## II. Failure to Protect

### A. Exhaustion

As a threshold matter, defendants argue that Molina's failure to protect claim should be dismissed because Molina did not exhaust his administrative remedies prior to filing suit. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Whether a relevant grievance sufficiently exhausted a claim to allow a prisoner to proceed in federal court is "defined not by the PLRA, but by the prison grievance process itself." *Id*. at 218.

Molina alleges that he made numerous requests to be transferred out of the cell he shared with Kimmie, but that the defendants refused to move either him or Kimmie. However, the issue at hand is not whether the defendants had notice of impending harm, as required to prove a failure to protect claim on the merits. Instead, the issue is whether Molina filed a proper grievance alleging that the defendants had failed to protect him.

Molina filed a grievance complaining of unfair institutional policy. Defendants respond that Molina's grievance was untimely under prison regulations, and therefore does not serve to satisfy the exhaustion requirement. The PLRA requires "proper exhaustion," which means that the inmate must comply with all of the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006).

4

The grievance, filed June 1, 2007, asserted that the housing policy in place in January, 2007, did not allow Molina to move from one two-man cell to another two-man cell and resulted in Molina's conflict with another inmate. [Doc. 52-1]. The grievance was denied as untimely because it was not filed within thirty days of the time Molina became aware, or should have become aware of his complaint, as required by Ohio Adm. Code 5120-9-31. Therefore, I find that Molina failed to properly exhaust his failure to protect claim.

### B. Merits

Even if Molina had properly exhausted his administrative remedies, his failure to protect claim would fail on the merits.

Prison officials have a duty under the Eighth Amendment to protect inmates from attacks by fellow prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). However, not every injury suffered by one inmate at the hands of another automatically translates into a constitutional violation. Before liability will attach, a prisoner must demonstrate that he was incarcerated under conditions imposing a substantial risk of serious harm, and that prison officials acted with "deliberate indifference" to his health or safety. *Farmer, supra*, 511 U.S. at 834, 837; see also *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992).

Molina asserts that there is a genuine issue of fact as to whether the defendants breached their duty to keep him safe from harm, despite notice of an impending assault. Molina alleges that multiple prisoners had previously complained of Kimmie's violent temperament, supporting Molina's claim that prison officials had notice of the risk Kimmie posed.

The fact that Molina instigated the altercation is fatal to this claim.³ In fact, Molina denied in his deposition that Kimmie touched him at all. Officer Schmersal broke Molina's leg while breaking up the fight. Molina therefore asserts a claim for relief on the basis of a failure to prevent exposure to a risk of harm, rather than a failure to prevent harm. In other words, Molina alleges that he was forced assault Kimmie as a preemptive measure.

This is insufficient. "However legitimate [Molina's] fears may have been," the Sixth Circuit has nevertheless held "that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (internal citation omitted).⁴ Molina grounds his claim, and justifies both it and his provocation of the incident on his fear that Kimmie might at some point assault him. Under *Wilson*, his claim must fail.

That is so, notwithstanding the Seventh Circuit's recent decision in *Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010). In that case, the court held that a § 1983 plaintiff had adequately pled a failure to protect claim even though he threw the first punch. *Id.*, at 23-24.

This approach is contrary to prevailing Sixth Circuit doctrine. Therefore, on the merits Molina has failed to state a claim against defendants Dunlop, Harter, Marroquin, Factor and

---

³ Molina stated that he "was tired" of Kimmie, and believing that if Kimmie was going to "go off" on Molina, this way at least Kimmie would do it in front of an officer who could stop it. [Doc. 50-1 at 27; Doc. 49 at 10-11]. Molina does not dispute that he confronted Kimmie, asking him "what's your problem" loud enough to attract the attention of the officer on duty, and raising his hands "asking him in a gesture, what's your problem," at which point Molina says Kimmie struck him. [Doc. 49 at 27.] He later stated in his deposition that Kimmie never actually touched him.

⁴ Molina cites *Ortiz v. Voinovich*, 211 F. Supp. 2d 917 (923) (S.D. Ohio 2002), which held only that injunctive relief may be available to protect an inmate from a threat of unconstitutional harm, not that money damages were available to remedy a failure to prevent a threat of unconstitutional harm. *See Bristow v. Eleby*, 2008 WL 3414132 (S.D. Ohio Aug. 8, 2008).

Featheringham for damages under the Eighth Amendment as a matter of law. While prisoners do have a constitutional right to be protected from the violence of other prisoners when there is adequate notice of an impending assault, that assumes that the complainant is the victim, rather than the proximate cause, of the assault.

## III. Excessive Force

Molina brings a claim for excessive use of force against defendant Schmersal, the officer who broke up the altercation between Molina and Kimmie. Molina argues that summary judgment is inappropriate on this claim because there is a genuine issue of material fact as to whether Schmersal applied force in good faith or for the purpose of causing harm. Specifically, Molina asserts that he was not resisting when Schmersal subdued him, rendering excessive the force Schmersal chose to apply.

Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). However, not every use of intentional force upon an inmate by a prison official will rise to the level of an Eighth Amendment violation. Indeed, "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Jones Bey v. Johnson*, 248 Fed. App'x 675, 677 (6th Cir. 2007) (unpublished disposition) (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). To state a claim, Molina must allege that the force used was "wanton" and "unnecessary." *Id.*

Here, the record shows that Schmersal applied force in an attempt to resolve a disturbance that indisputably posed a significant risk to the safety of inmates and prison staff. In that setting, "the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline

or maliciously and sadistically for the very purpose of causing harm." *Whitley, supra* 475 U.S. at 320-21 (internal quotation marks omitted).

To make this subjective good-faith determination, courts consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury. *Jennings v. Peiffer*, 110 Fed. App'x 643, 645 (6th Cir. 2004) (unpublished disposition) (citing *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992)).

Molina's description of the event supports the inference that Schmersal acted in good faith. Schmersal had little, if any, time to react to the fight, break it up, and keep it from flaring up again. Schmersal responded quickly, rushing to break up the altercation, which Molina had staged "next to the officer, right in front of the officer's desk," assuming that the officer would "be there to stop [Kimmie].[5] [Doc 49 at 25]. As Schmersal approached the inmates, he ordered them to the floor. Molina admitted that it took him "a little while to kind of grasp that [Schmersal] was issuing out an order because he was at the same time running towards us, towards Kimmie's back. . . . [W]hen I saw him coming and rushing in, he was already rushing in, he wasn't walking towards us, he was kind of in a hurry pace." [Doc 49 at 29]. Molina stated that Schmersal "kept on with the motion that he was coming probably." [Doc. 49 at 33]. Ritter testified that "by the time" Schmersal reached Molina, Molina had his hands in the air.

The record therefore suggests that Schmersal reacted instantaneously to events unfolding near his duty station. Because prison officials "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," courts grant them "wide-ranging deference

---

[5] I note the irony of Molina's position. His self-declared intent was to instigate the altercation in front of an officer who would then be forced to intervene. He now attempts to recover because the officer injured him in the process.

8

in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The record indicates that Schmersal was alone with multiple inmates at the time of the incident, heightening the risk he faced. The disruption caused by a fight can spread like wildfire, and the law does not require a guard, especially when alone, to pause to gauge whether what he is about to do to restore total control may be more than, by hindsight, may appear to have been needed. I may reasonably infer that Schmersal plausibly thought the force he used to "body slam" Molina was necessary under the circumstances. This is so regardless of Molina's apparent (but also possibly only momentary) compliance with the command to sit down. *See Whitley, supra*, 475 U.S. at 320-21 ("Inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.")

Defendants contend that Schmersal's motive in applying force can be established as a matter of law. I agree. In fact, so does Molina. His testimony indicates that he believed Schmersal acted in good faith. Molina testified that Schmersal, as an officer, "did what he thought it was right for him to do." [Doc. 49, at 38]. Molina added, "I'll make it on the record, you know, I don't downplay Mr. Smersal's [sic] attempt to restore order. My question has always been the appropriateness of the action that he took could have been different, and not just slamming himself on top of us and physically stopping us the way he did."

In other words, Molina argues that Schmersal acted in good faith to maintain or restore discipline, but in doing so used an unreasonable amount of force. This is insufficient to state a claim

9

under the Eighth Amendment. The extent of Molina's injury, though serious, does not alone suggest excessive force. Indeed, infliction of pain during the course of a prison security measure does not amount to a constitutional violation simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable. *Whitley, supra* 475 U.S. at 319.

As explained above, in the context of surviving summary judgment, the prisoner must have evidence that "will support a reliable inference of wantonness in the infliction of pain." *Whitley, supra*, 475 U.S. at 322. The only evidence on which Molina relies to show wantonness is that he raised his hands in the moment before Schmersal reached him. This does not suffice to support a reliable inference of wantonness in the face of the significant evidence suggesting that Schmersal acted with good faith.

Even when viewed in the light most favorable to Molina, the facts indicate that Schmersal threw his weight on Molina in a "good-faith effort to maintain or restore discipline." *Hudson, supra,* 503 U.S. at 7. Given the threat plaintiff had deliberately created to the safety of the inmates and Schmersal himself, and the resulting threat to the maintenance of good order and discipline in the institution, Schmersal's use of his entire body weight to subdue Molina cannot be characterized as deliberate indifference. The complaint does not allege adequately that Schmersal acted "maliciously and sadistically for the very purpose of causing harm." *Farmer, supra*, 511 U.S. at 835 (citation and quotation marks omitted). Summary judgment is therefore appropriate in favor of the defendants.

### IV. Deliberate Indifference to Medical Need

While recovering from his injury, Molina was treated by the Corrections Medical Center (CMC). Molina alleges that defendants Pam Neal, a health care administrator, and Aswin Amin, a

medical doctor, violated his Eighth Amendment rights by failing and refusing to carry out the treatment plan as ordered by the CMC.

Specifically, Molina claims that the defendants refused to provide Molina with the proper low-cut shoes for nearly four months, thereby wantonly causing unnecessary pain, suffering, injury and infection. In order to be successful, Molina must allege that the failure to provide him with low-cut shoes was an unnecessary and wanton infliction of pain, rather than a mere inadvertent failure to provide adequate care. He must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

"Deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, a plaintiff must show an objective and a subjective component, namely: 1) he had a serious medical need; and 2) he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

### A. Objective Prong

The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore, supra*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

Molina alleges that the work boots he wore during the four-month delay caused him severe pain and discomfort. Molina developed an infection on his foot where the work boots rubbed against a protruding surgical screw. Molina alleges that his injury was sufficiently serious as to be obvious to a lay person. However, though Molina's broken leg was certainly serious, the injury of which he complains is sensitivity, irritation and finally an infection at the spot where his surgically implanted pin rubbed against his boots. According to Molina, the infection did not develop until late December, 2007—after the defendants ordered Molina's low-cut shoes—making it unpersuasive evidence that the defendants ignored an obvious injury.[6] Dr. Amin treated the infection with antibiotics, which Molina acknowledged worked.

Because it is not clear that Molina's injury would have been obvious to a lay person, under *Napier* Molina must also provide verifying medical evidence to show a detrimental effect that the delay in receiving the low cut shoes had on his recovery.[7]

He has not done so. Instead, the medical records show that between 2007 and 2009 Molina received a full course of treatment for his leg, including near-monthly doctor appointments, antibiotics, orthotics, crutches, medical lay-ins, assignment to a lower bunk and eventually surgery to remove the protruding pin in his ankle. Molina asserts that the delay hindered the progress of his physical therapy, but does not provide expert testimony to verify this claim. There is no verifying evidence on the record that the delay in late 2007 had any detrimental effect on the course of his

---

[6] Molina also stated he got a second infection in February, 2008, in the same place, that was admittedly not caused by the incorrect shoes. [Doc. 49 at 69].

[7] In his original *pro se* complaint Molina also alleges that Pam Neal and Aswin Amin denied Molina the use of a cane and crutches for two months, and that Pam Neal admitted to ignoring Molina's serious medical needs. Molina's opposition to summary judgment, on which motion he had counsel, only asserts deliberate indifference as to the low-cut shoes.

12

recovery, and the record instead suggests that he received comprehensive care—if negligent with respect to his footwear.

## B. Subjective Prong

Even if Molina had submitted verifying evidence demonstrating that the delay had a detrimental effect, he has not met the second, subjective element of a deliberate indifference claim.

A valid claim under the Eighth Amendment requires more than mere negligence. *Farmer, supra*, 511 U.S. at 861; see also *Estelle, supra*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm").

"Deliberate indifference" requires a showing that the defendants had a "sufficiently culpable state of mind," *Wilson, supra*, 501 U.S. at 298, to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed." *Estelle, supra*, 429 U.S. at 104-05. Specifically, to satisfy the subjective prong, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer, supra*, 511 U.S. at 837).

As evidence of deliberate indifference, Molina submits the decision of the Chief Inspector on a Grievance Appeal dated December 11, 2007 and his medical records showing a request by the CMC orthopedics department for "shoes for comfort" as of August 2007. According to the medical records, on September 20, 2007, a doctor requested low-cut athletic-type shoes to accommodate a

13

soft insert. On October 11, 2007, the doctor noted that the quarter master at ACI denied the request for low-cut athletic shoes because they were not stocked anymore. Molina received the shoes on January 11, 2008.

In her disposition, the inspector concluded that the medical department attempted to give Molina appropriate medical care. The inspector found that the orthopedic clinic ordered "boots for comfort" on October 11, 2007. The inspector interviewed Ms. Neal, and learned that the order was originally denied because prison policy does not issue shoes "for comfort" but rather only for necessity. Dr. Kidd examined Molina and found that the shoes were in fact necessary, and his order was relayed to Ms. Neal. Ms. Neal agreed to convey the order to Dr. Amin for review and approval. Dr. Amin advised that Molina would be notified of the outcome. At the time of the inspector's decision, Ms. Neal confirmed that the shoes had been ordered. [Doc.1 at 25]. Approximately one month after the inspector's decision, Molina received his low-cut shoes.

Molina's own account of the episode supports the investigator's findings. Molina stated that Dr. Amin and Ms. Neal argued "that the wording on the order was not accurate." [Doc. 49 at 57]. Molina testified that after Dr. Amin and Ms. Neal ordered the incorrect shoes, Molina made an appointment with Dr. Kidd. Molina "explained to him that Ms. Neil [sic] and Dr. Amin have a problem with the wording of the order from the CMC, so he corrects it and he goes and talks to Ms. Neil [sic], and they talk about it. And then [Dr. Kidd] comes back and said I got this now. So he reissues the order, and then Dr. Amin goes over the order and approves it." [Doc. 49 at 62].

Molina's medical records, the inspector's report and Molina's own testimony indicate that an imprecise use of the phrase "for comfort" on the part of the prescribing doctor resulted in the delayed delivery of the shoes. Molina "would assume" that the defendants were arguing about the

14

wording because "they didn't want to spend the money. I've got no idea." *Id.* Molina "was under the impression that after a few complaints [the defendants] considered [Molina] as a nuisance." They did not express that sentiment to Molina, but he "felt it." *Id.* at 60. There is no evidence that Ms. Neal and Dr. Amin intentionally denied or delayed Molina's access to medical care or intentionally interfered with Molina's treatment, other than Molina's feeling that the defendants considered him a nuisance.

At most Molina has shown that the defendants were negligent in failing promptly to provide him with the requested shoes. There is no evidence that the delay in the provision of low-cut shoes was sufficiently serious under *Farmer* and *Napier* to rise to the level of a constitutional deprivation, considering the comprehensive care Molina undisputedly received. Thus, Molina has failed to show deliberate indifference to a serious illness or injury under § 1983.

## V. Due Process

Molina alleges that, as a result of the altercation with Kimmie, defendants put Molina in segregation and stripped him of good time credit without first providing him with a meaningful, full and fair Rules Infraction Hearing. Specifically, Molina asserts that the defendants denied his right to call a witness in his defense at his disciplinary hearing. In their motion for summary judgment, defendants state that Molina's Rules Infraction Board hearing met the requirements of due process, and submit the hearing report as evidence.

Molina does not respond nor even reiterate his due process claim in his opposition to summary judgment. I therefore consider the defendants' version of the facts to be undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly

15

address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

The question of what process is due is reached only if the inmate establishes the deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners have narrower liberty interests than other citizens, as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation omitted).

Generally, a prisoner has no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Wilkinson, supra,* 545 U.S. at 221. Molina's segregation alone, therefore, does not present the type of atypical and significant hardship which would give rise to a liberty interest protected by the Due Process Clause.[8] *Id.*, at 485.

Where, however, a prisoner faces a loss of good time, as Molina did here, he is entitled to some due process protection. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Specifically, due process requires the following hearing rights:  1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Id.*, at 563-67. In

---

[8] The duration of Molina's segregation is unclear.  However, the Sixth Circuit has found that even a two-and-one-half year stay in administrative segregation was not a constitutionally-significant loss of liberty, noting that administrative segregation is not the type of hardship "implicating a protected liberty interest" and this holds true even if the inmate has been in such segregation for an "extraordinarily long time [.]" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995)).

addition, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Molina asserted in his complaint that defendants denied him his right to call Officer Dunlop as a witness. However, the right to call witnesses is not an absolute right. *See Wolff, supra*, 418 U.S. at 566 (holding that inmates do not have an unrestricted right to call witnesses at disciplinary hearings). Prison officials may prevent inmates from calling witnesses "whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); *see also Bostic v. Carlson*, 884 F.2d 1267, 1271-72 (9th Cir. 1989) (finding no due process violation where the disciplinary committee refused to allow the inmate to summon witnesses who could not provide any pertinent new information) (citing *Wolff, supra*, 418 U.S. at 566); *Ponte v. Real*, 471 U.S. 491, 495 (1985) (the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases); *Langton v. Berman*, 667 F.2d 231 (1st Cir. 1981) (holding that prison official did not deny inmate due process when he refused to call witnesses whose testimony would not have added anything).

Here, the record reveals that the Disciplinary Hearing Officer denied Molina's request for Officer Dunlop to testify as irrelevant because Dunlop stated that she had "no knowledge of the fight. That she was not on duty when the fight occurred." [Doc.15-1]. The denial of Dunlop's testimony therefore did not prejudice Molina nor violate his due process rights.

### VI. Qualified immunity

Defendants claim that Molina's individual capacity claims are barred by qualified immunity because Molina has failed to show a violation of clearly established law.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich, supra*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

As noted above, defendants Schmersal, Neal and Amin did not violate Molina's constitutional rights.

Molina has not alleged the personal involvement of defendant Dunlop in the excessive force, due process, or deliberate indifference claims. Molina has therefore failed to state a claim with respect to Dunlop. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("A complaint fails

to state a claim when a Plaintiff's complaint does not affirmatively plead the personal involvement of a defendant in the alleged unconstitutional action about which the plaintiff is complaining.").

Accordingly, they are entitled to qualified immunity.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for Summary Judgment be, and the same hereby is granted.

So ordered.

/s/James G. Carr<br>U.S. District Judge